Margaret E. KELLY

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

No. Civ. 2-81-233.

United States District Court, E.D. Tennessee, N.D.

July 13, 1983.

David H. Frackelton, Bristol, Va., for plaintiff.

Guy Blackwell, Asst. U.S. Atty., Greeneville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Secretary of Health and Human Services terminating a period of disability and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"), respectively. The case is now before the Court on defendant's motion for judgment on the pleadings and plaintiff's motion to reinstate benefits.

Plaintiff has a high school education and is now sixty-one years old. (Tr. 36). She has worked in the restaurant business as an assistant manager and as a waitress. (Tr. 37, 39–40). She has also worked in the clothing industry as an inspector and as a presser. (Tr. 39–40). These jobs involved light physical exertion and are classified as skilled, semiskilled and unskilled. (Tr. 113–17, 36–41). Plaintiff last worked on May 15, 1976 as a cook and waitress at a restaurant. (Tr. 49, 117).

Plaintiff filed an application for disability insurance benefits on March 29, 1977 claiming arthritis, paralysis, loss of hearing, dizzy spells, blackout periods, abdominal pain, colitis and nervous tension as her impairments. (Tr. 49). Plaintiff was awarded benefits, effective May 15, 1976, after a diagnosis of peripheral neuropathy and mucus colitis. (Tr. 53).

The Secretary determined that plaintiff was no longer disabled as of September 1978. (Tr. 67–70). Plaintiff appealed this determination to an Administrative Law Judge [ALJ] who reviewed the case *de novo.* (Tr. 15–27). The ALJ found that as of September 1978 plaintiff

continued to experience hypertensive cardiovascular disease, without evidence of end organ damage; musculoskeletal impairments, without significant restriction of joint motion; visual impairments, correctable to normal with appropriate lens; a history of gastrointestinal impairment without evidence of malnutrition, malabsorption or weight loss; and mild emotional disturbance without residual functional restrictions or limitations.

The ALJ further found that plaintiff did not experience "pain, discomfort, physical or emotional symptomatology, or functional limitation or restriction, singly or in combination, of the requisite severity, frequency or duration to be "disabling"; allegations and testimony to the contrary [were not] found credible." (Tr. 26). The ALJ concluded that plaintiff could engage in her previously performed garment industry and restaurant jobs, and therefore, was not disabled. (Tr. 26). The decision of the ALJ

became the final decision of the Secretary when the Appeals Council affirmed on September 17, 1981. (Tr. 3).

On April 8, 1982 the Court remanded this case to the Secretary for reconsideration of the evidence submitted by Doctor Grafton Thurman. *See Wood v. Secretary of Health and Human Services,* No. 80–1506 (6th Cir. December 2, 1981). After consideration of the evidence from Dr. Thurman, the ALJ made similar findings and conclusions and recommended the same decision made before remand. (Tr. 122–28). The Appeals Council adopted the ALJ's recommended decision on October 26, 1982. (Tr. 120).

The only question before this Court is whether the decision of the Secretary is supported by substantial evidence in the record taken as a whole. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The term "disability" is defined in § 223(d)(1)(A) of the Act, 42 U.S.C. § 423(d)(1)(A), as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The Act defines a "physical or mental impairment" in § 223(d)(3), 42 U.S.C. § 423(d)(3), as an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The definition of disability for Supplemental Security Income, the inability to engage in substantial gainful activity, is the same as that for social security disability insurance cases. *See* 42 U.S.C. §§ 423, 1382. Consequently, plaintiff's claim for both kinds of benefits will be treated simultaneously.

The Secretary's regulations [1] provide that if a person is capable of performing past relevant work, then he or she will not be considered disabled. 20 C.F.R. § 404.-1520(e).

Plaintiff testified at an evidentiary hearing before the ALJ on January 10, 1979. (Tr. 31–48). She stated that her restaurant jobs included waiting on customers, cooking short orders, washing dishes, acting as cashier, supervising employees and maintaining time records. (Tr. 36–37, 39–40). Her pressing and inspecting jobs in the garment industry involved standing and lifting of ten to twenty pounds. (Tr. 38). Plaintiff stated that because of her back, arms and legs she could no longer lift anything over 25 pounds. (Tr. 42). She claimed her grip was weak and had caused her to drop several dishes. (Tr. 42). She complained of abdominal pain and stated that she took medication for this pain. (Tr. 42–43). She had gained fifteen to twenty pounds since 1974. (Tr. 43). She reported that the right side of her body was weak. (Tr. 43). Plaintiff claimed she had recently had a black out spell of twenty-five minutes duration. (Tr. 43–44). She also complained of dizziness and shortness of breath when she lay down on her left side. (Tr. 44). Plaintiff has lost hearing in one ear. (Tr. 45). She experienced nervousness, but could associate with other people. (Tr. 45). Plaintiff stated that she spent her time reading. She did little housework and did not drive an automobile; she did her own cooking. (Tr. 46).

Doctor Linval Fleetwood, a family practitioner, treated plaintiff from March 1977 to March 1978. On March 21, 1977 Dr. Fleetwood wrote that plaintiff had a "[m]oder-

---

1. Regulations pertaining to disability insurance benefits are codified at 20 C.F.R. §§ 404.1501–404.1569. Regulations pertaining to supplemental security income benefits are codified at 20 C.F.R. §§ 416.901–416.969. The supplemental security income regulations parallel those promulgated for use in disability insurance cases.

ately irritable colon with probable low-grade mucus colitis." (Tr. 79). He also observed moderate arteriosclerotic changes, right sided hearing loss, neck tenderness on full rotation to the right, tenderness in the lower quadrants of the abdomen, and a full range of motion in plaintiff's extremities. (Tr. 79). Dr. Fleetwood noted an apparent loss of superficial sensory perception in plaintiff's right leg, however deep pain perception and position sense were present. Deep tendon reflexes were described as normoactive. Dr. Fleetwood diagnosed plaintiff as suffering from anxiety-depression, peripheral neuropathy and mucus colitis. (Tr. 80). Dr. Fleetwood was of the opinion that plaintiff was disabled. (Tr. 80). On April 11, 1977 Dr. Fleetwood indicated that plaintiff suffered moderate motor weakness and fairly severe sensory deficit in the right arm and leg. (Tr. 77). He also wrote that plaintiff had moderate to severe pain in her right hip. He noted that an x-ray of the right leg showed no significant bony abnormality. (Tr. 77). On March 27, 1978 Dr. Fleetwood diagnosed plaintiff as suffering from gastric ulcer, mucous colitis, osteo-arthropathy with degeneration or herniation of the nucleus pulposos of C5 and C6, arteriosclerotic heart disease and chronic anxiety. (Tr. 72). This revised diagnosis was partly supported by the report of Doctor D.R. Limbach, a radiologist. (Tr. 75–76).

Doctor William Graves, an osteopath, examined plaintiff on July 27, 1978. (Tr. 106). Dr. Graves wrote that plaintiff had periodic attacks of cerebral ischemia and fainting. (Tr. 105). He believed plaintiff was disabled because of pain in her lumbar spine and both legs. (Tr. 105). Dr. Graves' opinion is based largely upon the reports of Dr. Fleetwood. (Tr. 106).

Doctor Charles Parker, an ophthalmologist, examined plaintiff on September 21, 1978 and found her vision to be correctable to normal. (Tr. 107).

Doctor Grafton Thurman, an internist, examined plaintiff on July 31, 1978. Pulmonary function studies of plaintiff indicated that she had adequate pulmonary reserve. (Tr. 87). Chest x-rays were found to be normal. (Tr. 87). Dr. Thurman found that plaintiff had good range-of-motion and no significant deformity in her peripheral joints. (Tr. 87–88). Plaintiff's back had good range of motion, no paraspinous muscle spasm and no evidence of nerve root compression. (Tr. 88). X-rays, an electrocardiogram and a neurological physical examination led Dr. Thurman to believe that plaintiff was not disabled from hypertension or her nerves. (Tr. 88). Dr. Thurman completed a physical capacities evaluation form in which he indicated plaintiff was capable of light work. (Tr. 104).

■ Because of the thoroughness of Dr. Thurman's report and because it was more recent than the report of Dr. Fleetwood, the ALJ was justified in giving it greater weight. In the past two years, however, the reliability of medical reports from the Thurman and Thurman group of physicians, also known as the Suburban Internal Medical Group, has been questioned. United States District Judge Glen Williams declared the reports of this group to be fraudulent. *Payne v. Schweiker,* No. 80–0094–B (W.D.Va. July 8, 1981). The United States Court of Appeals for the Sixth Circuit, when made aware of the *Payne* decision, remanded a social security disability case to the Secretary when the court found that the Secretary had relied in substantial part upon a report from the Thurman and Thurman group of physicians. *Wood v. Secretary of Health and Human Services,* 667 F.2d 1029 (6th Cir.1981). The Sixth Circuit has continued to remand similar cases. *Stanton v. Secretary of Health and Human Services,* 709 F.2d 1508 (6th Cir.1983). The reports of Thurman and Thurman have never been found to be fraudulent by a court in the Sixth Circuit. The Court of Appeals for this circuit has only required the Secretary to reconsider the reports of Thurman and Thurman. In *Stanton* the court indicated that the Secretary need not necessarily obtain additional medical evidence that would support the Thurman and Thurman report.

On remand in this case the Secretary did not obtain additional medical evidence. Rather the Secretary has sought to support the report of Dr. Grafton Thurman with the results of an investigation conducted by the Secretary. This investigation found nothing fraudulent about the medical practices of the Thurman and Thurman group of physicians. (Tr. 149). Additionally, the Court observes that plaintiff has never questioned the validity of her physical examination conducted by Dr. Thurman. Under these circumstances, the Court has no reason to doubt the validity of Dr. Thurman's report and must conclude that his report in this case constitutes substantial evidence.

The Court has reviewed the entire record and concludes that the findings of the Secretary are supported by substantial evidence and that her regulations were correctly applied in plaintiff's case.

For these reasons, it is ORDERED that defendant's motion for judgment on the pleadings be, and the same hereby is, granted. It is further ORDERED that plaintiff's motion for reinstatement be, and the same hereby is, denied. It is further ORDERED that this case be, and the same hereby is, dismissed.

Order Accordingly.

